No. 13-1995


**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

*Martin Curry, D.C.*

**Appellant**

*v.*

*Trustmark Insurance Co., Inc. et al.*

**Appellees**
_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
_____

**Opening Brief of Appellant**
_____


E. DALE ADKINS, III
EMILY C. MALARKEY
SALSBURY,   CLEMENTS,   BEKMAN,
    MARDER & ADKINS, LLC
300 W. Pratt Street, Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................ iv

Jurisdictional Statement ........................................................... 1

Issues Presented For Review........................................................ 1

Statement of the Case .............................................................. 2

Statement of the Facts ............................................................. 3

    **A.**    Dr. Curry's Permanent Disability from Working
          as a Chiropractor ......................................... 3

    **B.**    The Lawsuit and Proceedings Below........................ 9

Summary of the Argument ........................................................ 10

Argument.......................................................................... 11

    **I.**    STANDARD OF REVIEW ....................................... 11

    **II.**    MARYLAND'S STATUTE OF LIMITATIONS
          FOR BREACH OF CONTRACT ............................... 12

    **III.**    UNDER MARYLAND LAW THE CAUSE OF ACTION ACCRUED
          WHEN THE INSURER FORMALLY DENIED DR. CURRY'S CLAIM ..... 14

    **IV.**    CASE LAW FROM OTHER JURISDICTIONS ALSO SUPPORTS A
          FINDING THAT THE BREACH FIRST OCCURRED WHEN THE
          INSURER FORMALLY DENIED DR. CURRY'S CLAIM ........................ 17

    **V.**    BASED ON THE INSURER'S PAST BEHAVIOR MAKING LATE
          PAYMENTS AND THE INSURER'S STATEMENTS TO DR. CURRY
          THAT HIS CLAIM WAS OPEN AND IT WAS CONTINUING THE
          REVIEW PROCESS, A REASONABLE JUROR COULD CONCLUDE
          THAT THE INSURER WOULD PAY THE BENEFITS DUE UNTIL
          THE FINAL DENIAL LETTER OF SEPTEMBER 29, 2008 ..................... 20

**VI.**   **DR. CURRY REASONABLY CONDITION UNDERGOING A MEDICAL EXAMINATION ON THE INSURER PAYING PAST BENEFITS DUE** .......................................................... **23**

**Conclusion** ................................................................................. **28**

**Request for Oral Argument** ............................................... **29**

**Certificate of Compliance** ................................................ **30**

**Certificate of Service** ........................................................ **31**

## TABLE OF AUTHORITIES

**Cases**

*Akins v. Washington Metro. Area Transit Auth.*,
   729 F. Supp. 903 (D.D.C. 1990)................................................................... 19

*Balt. Neighborhoods, Inc. v. Rommell Builders, Inc.*,
   3 F. Supp. 2d 661 (D. Md. 1998)................................................................ 12

*Commerical Union Ins. Co. v. Porter Hayden Co.*,
   698 A.2d 1167 (Md. 1997) ......................................................................... 15

*Cooper v. Berkshire Life Ins. Co.*,
   810 A.2d 1045 (Md. Ct. Spec. App. 2002)............................................. 22, 24

*Ely v. Science Applications Intern. Corp.*, 716 F. Supp. 2d 403 (D. Md. 2010) .... 16

*Fowler v. A & A Co.*, 262 A.2d 344 (D.C.1970) .................................................. 19

*Harris v. Prudential Ins. Co. of Am.*, 93 F. App'x 139 (9th Cir. 2004) ................. 19

*Hebron v. Am. Isuzu Motors, Inc.*, 60 F.3d 1095 (4th Cir. 1995)........................... 24

*Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365 (3rd Cir. 1996) ................. 19

*Huntt v. State Farm Mut. Auto. Ins. Co.*,
   527 A.2d 1333 (Md. Ct. Spec. App. 1987).................................................... 25

*Lane v. Nationwide Mut. Ins. Co.*, 582 A.2d 501 (Md. 1990) ......................... 15, 16

*Leporace v. New York Life & Annuity*,2011 WL 679446 (D. Pa. 2011) ............... 19

*Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136 (Cal. Ct. App. 1990)............... 19

*Massachusetts Mut. Life Ins. Co. v. Sinkler*,
   No. 10 Civ. 0336 (PJM), 2012 WL 3059566 (D. Md. July 24, 2012)........... 27

*Medina v. Provident Life & Accident Ins. Co.*, No. 10 Civ. 3146 (BEL),
   2011 WL 249502 (D. Md. Jan. 24, 2011)..................................................... 17

*Mobley v. New York Life Ins. Co.*,
    295 U.S. 632, 55 S. Ct. 876, 79 L. Ed. 1621 (1935)................................. 18, 19

*Morrison v. Nissan Co., Ltd.*, 601 F.2d 139 (4th Cir. 1979) ................................ 12

*Mowers v. Paul Revere Life Ins. Co.,* 204 F.3d 372 (2d Cir. 2000) ...................... 27

*Mut. Life Ins. Co. of N.Y. v. Moyle*, 116 F.2d 434 (4th Cir. 1940) ........................ 17

*Overstreet v. Kentucky Cent. Life Ins. Co.*,
    950 F.2d 931 (4th Cir. 1991) ....................................................... 11

*Poffenberger v. Risser*, 431 A.2d 677 (Md. 1981) ............................................... 12

*Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282 (4th Cir. 1987)................. 11

*Roe v. Doe*, 28 F.2d 404 (4th Cir. 1994)............................................................... 11

*Smart v. State Farm Mut. Auto. Ins. Co.*,
    730 A.2d 690 (Md. Ct. Spec. App. 1999)................................................ 23, 24

*Singer Co., Link Simulation Systems Div. v. Baltimore Gas & Electric Co.*,
    558 A.2d 419, 425 (Md. Ct. Spec. App. 1989)........................................ 16, 17

*State Farm Mut. Auto. Ins. Co. v. O'Leary*,
    C0-97-2016, 1998 WL 219782 (Minn. Ct. App. May 5, 1998) .................... 27

*Vigilant Ins. Co. v. Luppino*, 723 A.2d 14 (Md. 1999) ........................ 12, 14, 15, 16

*W.B. & A. Elec. R.R. Co. v. Moss*, 100 A. 86 (Md. 1917) ...................................... 14

*W. Nat. Ins. Co. v. Thompson*, 797 N.W.2d 201 (Minn. 2011) ............................. 27

## Statutes and Rules

Fed. R. Civ. P. 56................................................................................................. 11

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ....................................................... 9, 12

## JURISDICTIONAL STATEMENT

This appeal stems from the grant of a motion for summary judgment under Federal Rule of Civil Procedure 56. Jurisdiction in the District Court existed under 28 U.S.C. § 1332 given the parties' diversity of citizenship. On August 8, 2013, Appellant noted an appeal from the District Court's final judgment, which disposed of all of Appellant's claims. This Court accordingly has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1. **WHEN DOES AN ACTION FOR FAILURE TO PAY DISABILITY BENEFITS ACCRUE UNDER THE LAW OF MARYLAND?**

2. **MAY AN INSURED CONDITION UNDERGOING A MEDICAL EXAMINATION BECAUSE HIS DISABILITY INSURER IS SUBSTANTIALLY IN ARREARS IN PAYING BENEFITS ALREADY DUE?**

## STATEMENT OF THE CASE

This case involves a claim by Dr. Martin Curry for breach of contract for failure to pay disability benefits under a policy underwritten by Continental Assurance Company and Trustmark Insurance Company, Inc. (collectively "The Insurer"). On September 29, 2008, The Insurer wrote Dr. Curry and denied his claim. On October 10, 2008, The Insurer rejected Dr. Curry's appeal of its denial.

Two years and ten months after the Insurer's denial of his claim, on July 27, 2011, Dr. Curry filed a lawsuit in the United States District Court for the District of Maryland asserting breach of contract. The Insurer filed a Motion for Summary Judgment on December 14, 2012, which the District Court granted on July 15, 2013.

On July 29, 2013, Dr. Curry moved for reconsideration, which was denied on August 1, 2013. Dr. Curry noted this timely appeal.

## STATEMENT OF THE FACTS

**A. Dr. Curry's Permanent Disability from Working as a Chiropractor.**

In 1989, Dr. Martin Curry purchased an "own occupation" disability policy ("Policy") from Continental Assurance Company ("Continental"), wherein Continental promised to pay benefits if Dr. Curry became unable to work as a chiropractor and for as long as he was disabled.[1]  J.A. 1035.  For 14 years, Dr. Curry paid his biannual premiums to keep the Policy in effect.  J.A. 1055.

On November 25, 2003, Dr. Curry injured his lower back while performing a chiropractic adjustment on a patient.  J.A. 153.  This injury required orthopedic disc surgery by Thomas Volatile, M.D. in December of that year.  J.A. 1061-62.  According to Dr. Volatile, Dr. Curry unfortunately developed perineural fibrosis (scarring of the nerves) and arachnoiditis (inflammation of the arachnoid membrane around the spinal cord).  J.A. 1080.  Ten months after his surgery, Dr. Volatile advised his patient, Dr. Curry, that he could no longer perform the physical maneuvers required of a practicing chiropractor.[2]  *Id*.

---

[1]  This policy was assigned by Continental to Trustmark Insurance Company, Inc. ("Trustmark") in 1995.  Both companies are parties to this case.  J.A. 32.

[2]  Dr. Volatile's medical record states, "[t]hese symptoms were aggravated by any activity, **making it impossible for him to work at this time**.  . . . .  **I believe Dr. Curry has reached maximum medical benefit.  I believe that this will cause him some permanent disability.**"  J.A. 1080 (emphasis added).

3

On December 31, 2003, Dr. Curry submitted a claim form to The Insurer seeking benefits pursuant to the Policy.[3]  J.A. 1063-72.  As a result of Dr. Curry's claim, The Insurer began paying benefits for his disability.  Those benefits were not paid in equal monthly installments but rather in periodic lump sum payments at random points in time.  Payments would not be made for months, then a lump sum would be paid.  For example, the first payment was made on February 18, 2004 as a lump sum for three months of benefits from December 26, 2003 through February 25, 2004.  J.A. 1073-74.  Benefits for the five month period between April and September 2004 were made in a lump sum.  J.A. 1075-76.  Benefits for the five month period between September 2004 and February 2005 were not made until March 2005.  J.A. 1093-94.  Perhaps most significantly, Social Insurance Substitute Benefits overdue for the almost two year period from November 2005 to September 2007 were not paid until one lump sum payment on August 4, 2008.  J.A. 1194-96.  These benefits were due and had not been paid when Dr. Curry was asked by the Insurer to undergo a medical examination ("IME") in June of 2008.  J.A. 1192-94.  Dr. Curry agreed to undergo the medical examination if The Insurer would bring current the amount owed.  They did not do so.  J.A. 1197.

From December 31, 2003 until August 4, 2008, The Insurer made benefit payments to Dr. Curry.  J.A. 1197.  During this period as noted, The Insurer was

---

[3]  Claims were also made to and honored by two other Disability Insurers for two other policies taken out by Dr. Curry.  J.A. 1065.

4

often and significantly in arrears, but had never denied Dr. Curry's claim.  Indeed, on July 31, 2008, The Insurer wrote Dr. Curry assuring him that "**[Y]our claim has not yet been denied**" and "**[Y]our claim remains open.**"  J.A. 1194 (emphasis added).

During this same time, The Insurer repeatedly contended that Dr. Curry had not filed the right forms, reports, tax returns, or Social Security releases with them. J.A. 1073-74, 1075, 1084, 1093-94, 1114-16, 1127, 1130-31, 1132, 1134, 1135, 1159, 1181-82, 1185-86.  The Insurer even required that Dr. Curry supply them with information about his daily activity level and routine, which had nothing to do with his ability to work as a chiropractor.  J.A. 1142-43.  Dr. Curry complied with The Insurers' repeated requests to provide supplemental, repetitious, and unnecessary information.   J.A. 1085-88, 1091, 1118-22, 1126, 1133, 1139-58, 1167-80, 1183, 1184.

The evidence of Dr. Curry's permanent disability from the practice of chiropractic was manifest.  It came from his treating physicians and consultants, as well as from the physicians hired by The Insurer who confirmed the claim.

In March 2004, in a report furnished to The Insurer, James M. Cox, D.C., a chiropractor consulted by Dr. Curry, said: "[u]ntil such a time as the ranges of motion, straight leg raises, motor weakness, and the ability to ambulate [sic], **I**

doubt that you will be able to perform your duties as a chiropractic physician." J.A. 1077 (emphasis added).

Dr. David Sniezek, M.D., D.C. a physical medicine specialist and rehabilitation physician wrote in December 2004 in a report furnished to The Insurer: "Dr. Curry is presently not working in his profession as a chiropractic physician **and it is my opinion that he is permanently disabled for [sic] his occupation**." J.A. 1083 (emphasis added). Dr. Sniezek confirmed this opinion on January 13, 2005, March 31, 2005, July 24, 2005, June 20, 2006, and July 3, 2007. *See* J.A. 1089 ("At this point, he is unable to function in his role as a chiropractor."); J.A. 1091 (where Dr. Sniezek checked the box next to "In your opinion, is patient now impaired from Patient's Occupation."); J.A. 1125 ("Further, it is my opinion, that attempting to continue working in his profession as a chiropractor will cause further damage with deterioration of his condition at a faster rate resulting in additional incapacitation that will require even more medical resources."); J.A. 1129 (Dr. Curry continues to be unable "to perform the physical requirements of his profession."); J.A. 1133 (Dr. Curry's "Condition is Permanent" and that Dr. Curry was "Unable to Sustain Predictable Effort- See Previous.").

In addition to Dr. Curry's treating and consulting health care providers, Volatile, Cox and Sneziek, The Insurer had Dr. Curry's claim evaluated by physicians it hired. John Bianchi, M.D., a physician retained by The Insurer on

February 17, 2005 opined, "**I feel the impairment is likely permanent given that further surgical procedures are not indicated and treatment is palliative**." J.A. 1092 (emphasis added). On October 4, 2007, The Insurer sent Dr. Curry's file for a second review by another physician it hired. Anthony Parisi, M.D. concluded, "**Claimant can be considered at maximum medical improvement and any restrictions or limitations that he might have would be considered long-term. The prognosis for additional recovery without further intervention is poor.**" J.A. 1138 (emphasis added). On April 22, 2008, The Insurer had a third in house physician review Dr. Curry's records. Dr. Ehrlich acknowledged that Dr. Curry's treating physicians and Dr. Parisi had concluded that his condition was permanent,[4] but recommended an IME to confirm those

---

[4] This recognition is significant. According to the plain language of the Policy, Dr. Curry met the definition of Total Disability and benefits were due when he could not work as a chiropractor and he could show that further recovery was not expected. Dr. Ehrlich implicitly conceded that Dr. Curry was Total Disabled as defined by the Policy thru April 22, 2008. J.A. 1188. The Policy states:

> because of Injury or Sickness:
>
> (1)    You cannot perform the substantial and material duties of Your regular occupation (After retirement, Your occupation will be considered to be the normal activities of a retired person of Your age); and
>
> (2)    You are receiving care by a Physician which is appropriate for the condition causing Your Disability. **You do not need to be under a Physician's care on a regular basis if You can show that further recovery is not expected**.

J.A. 1039 (emphasis added).

7

conclusions.  J.A. 1188.  On October 8, 2008 (after Dr. Curry's claim had been denied), Howard Fixler, M.D., a fourth physician hired by The Insurer, also noted that Dr. Curry's physician had "determined that he is permanent and totally disabled" but recommended an IME to confirm this fact.  J.A. 1163.

On April 22, 2008, even though it was years delinquent, The Insurer requested that Dr. Curry undergo a medical examination scheduled for June 13, 2008.[5]  J.A. 1189-90.  Dr. Curry responded asking the authority for an IME when past benefits were unpaid to date.  J.A. 1191.  The Insurer ignored his inquiry. Because The Insurer was in arrears in benefits payments at the time of the IME, Dr. Curry did not attend it.  Thereafter, on August 26, 2008 Dr. Curry reiterated his position that he would undergo an IME as soon as The Insurer paid the past due benefits.  J.A. 1197.

The Insurer denied Dr. Curry's claim for total disability benefits by letter on September 29, 2008 and advised Dr. Curry of his appeal rights.  J.A. 1198-1200. The Insurer wrote, "we are closing your claim with benefits provided through September 25, 2007.  If you disagree with this determination you may submit an appeal."  J.A. 1200.  Dr. Curry wrote and disputed the decision, which The Insurer considered an appeal.  J.A. 1201-03.  On October 10, 2008, The Insurer wrote to

---

[5]  The Policy provides for a medical examination as follows, "At Our expense, We can have a Physician examine You as often as reasonably necessary during Your claim."  J.A. 1041.

Dr. Curry and advised, "our decision with regard to your claim and that you do not meet your policy requirements for total disability benefits remains the same." J.A. 1203.

### B.    The Lawsuit and Proceedings Below.

On July 27,2011, two years and ten months after The Insurer's September 29, 2008 letter denying Dr. Curry's claims, Dr. Curry filed a lawsuit against Trustmark and Continental for breach of contract in the United States District Court for the District of Maryland.[6] J.A. 9-36. The parties conducted extensive discovery. At the close of discovery, The Insurer moved for summary judgment. J.A. 4-981.

On July 15, 2013, the District Court granted the Motion, finding on behalf of The Insurer. J.A. 1269-78. Specifically, the court held that under Maryland law a cause of action for breach of a disability policy accrues every time The Insurer fails to issue a monthly disability benefit. J.A. 1276. Therefore, the lower court found that the statute of limitations precluded Dr. Curry's claims preceding July 27, 2008. *Id*. The court also concluded that by conditioning his appearance at a medical exam on The Insured becoming current on past due benefits, Dr. Curry lost all rights to any benefits. J.A. 1277-78.

---

[6]    In Maryland, there is a three year limitations period on a breach of contract action. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

9

On July 29, 2013, Dr. Curry moved for reconsideration on the ground that there was a dispute of fact because he had unconditionally made himself available for an IME after June 13, 2008.  J.A. 1279-96.  The District Court denied Dr. Curry's Motion for Reconsideration on August 1, 2013 (J.A. 1297-99), and this timely appeal followed.  J.A. 1300.

## SUMMARY OF THE ARGUMENT

Under Maryland law, the statute of limitations did not begin to run until September 29, 2008, when The Insurer wrote Dr. Curry and formally denied his claim for benefits due.  The District Court erred when it determined as a matter of law that Dr. Curry's claim for breach of contract began to run each month The Insurer did not pay benefits due.  Neither Maryland law nor the law from other jurisdictions that has considered the issue supports the lower court's decision.

Furthermore, even if the District Judge's interpretation of the law was correct, the question of when Dr. Curry's claim accrued for purposes of limitations was a question of fact for the jury.  The evidence in this case of The Insurers' history of late payments, history of lump sum payments, and statements that it was still considering his claim open and ongoing, could allow a reasonable juror to conclude that the Insurer did not breach the contract until September 29, 2008 and

10

thus the claim was timely.  The District Court's contrary finding ignored this clear dispute of material fact.

Finally, the Court erred in determining that as a matter of law, Dr. Curry acted unreasonably by conditioning his attendance at an IME on the Insured first honoring its contractual obligation by paying all past benefits due.   The reasonableness of this conduct was a factual question for the jury.


## ARGUMENT

### I.    STANDARD OF REVIEW.

This Court must review *de novo* the District Court's entry of summary judgment.  *See Roe v. Doe*, 28 F.2d 404, 406 (4th Cir. 1994).  Summary judgment is only appropriate if there is no genuine dispute as to any material fact.  *Id.*; Fed. R. Civ. P. 56. While a movant bears the burden of proving that he is entitled to summary judgment, the Court is required to draw all inferences in favor of the non-moving party. *See Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

Indeed, the district courts have noted that the standard for summary judgment in this Circuit is "strict, and that summary judgment is inappropriate **even if merely the inferences to be drawn from the facts are in dispute**." *Balt.*

*Neighborhoods, Inc. v. Rommell Builders, Inc.*, 3 F. Supp. 2d 661, 663 (D. Md. 1998) (emphasis added) (citing *Morrison v. Nissan Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979)).

## II.    MARYLAND'S STATUTE OF LIMITATIONS FOR BREACH OF CONTRACT.

In Maryland, there is a three year limitations period on a breach of contract action.   Md. Code Ann., Cts. & Jud. Proc. § 5-101.   "Generally, a cause of action for breach of a contract accrues, and the statute of limitations begins to run, when the plaintiff knows or should have known of the breach."   *Vigilant Ins. Co. v. Luppino*, 723 A.2d 14, 17 (Md. 1999) (citing *Poffenberger v. Risser*, 431 A.2d 677 (Md. 1981)).   In this case, the breach occurred on September 29, 2008 when The Insurer first notified Dr. Curry that it was denying his claim.   J.A. 1198-1200. There is no doubt that even The Insurer considered this letter to be their final determination regarding Dr. Curry's rights to benefits under the Policy.  That letter states in relevant part:

> Based on all of the above, including a complete review of your claim file, we find that you do not meet your policy requirements for total disability benefits.  Therefore, we are closing your claim with benefits provided through September 25, 2007.

J.A. 1200.   Indeed, the letter even outlined Dr. Curry's right to appeal The Insurer's decision.   *See id.* ("If you disagree with this determination you may

submit an appeal."). [7]  There is little question that the September 29, 2008 letter on behalf of The Insurer constituted the first time it had formally and finally denied Dr. Curry's claim.

The District Court, however, determined that under Maryland law a cause of action for breach of contract had accrued every time Dr. Curry became aware that The Insurer had not paid the monthly benefit.  The Court found, "[t]herefore, any breaches of the Policy that accrued and could have been discovered by [Dr. Curry] through the exercise of reasonable diligence before July 27, 2008" were barred by the statute of limitations.  J.A. 1274.  This reasoning violates Maryland law and is not in accordance with the majority of courts that have considered the issue.

---

[7]  For even further support that The Insurer considered their September 29, 2008 letter to be their final disposition of the matter see J.A. 1233 (an October 6, 2008 letter wherein The Insurer again wrote Dr. Curry and explained that his "recent submission of information" was being considered as an appeal); J.A. 1234 (an October 8, 2010 letter wherein The Insurer wrote that their "decision with regard to your claim and that you do not meet your policy requirements for total disability benefits remains the same."), and J.A. 1201-03 (an October 10, 2008 letter in which The Insurer outlined Dr. Curry's right to have it "reconsider his claim.").  In fact, arguably, the statute of limitations did not begin to run until October 10, 2008 when The Insurer wrote Dr. Curry with their final denial letter after consideration of what they characterized as his appeal.  *Id*.  Resolution of this issue, however, is not required in this case because Dr. Curry timely filed his lawsuit within three years of the September 29, 2008 letter in which The Insurer first denied his claim for benefits.

### III. UNDER MARYLAND LAW THE CAUSE OF ACTION ACCRUED WHEN THE INSURER FORMALLY DENIED DR. CURRY'S CLAIM.

The Maryland appellate courts have not published an opinion that considers when claims for breach of a disability insurance contract accrue for the purpose of the statute of limitations. They have, however, discussed when the statute of limitations begins to run in the context of other insurance contracts. These discussions are instructive and support Dr. Curry's position that the breach in this case did not occur until The Insurer formally and finally denied his claim.

In *Vigilant Ins. Co. v. Luppino*, the Maryland Court of Appeals considered when an insurer breaches its duty to defend an insured pursuant to an indemnity provision in a homeowner's insurance policy, and held that the breach occurs when final judgment is entered in the underlying litigation. 723 A.2d at 17-18. The Court went on to recognize that a duty to defend, "by its very nature, is a continuing one that extends throughout the tort suit by the third party against the insured." *Id.* at 18. Accordingly, the Court concluded that "in the computation of the statutory period, in cases where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future, **the statute begins to run only from the time the services can be completed or from the time the event happens**." *Id.* (citing *W.B. & A. Elec. R.R. Co. v. Moss*, 100 A. 86, 89 (Md. 1917) (emphasis added).

14

The Court of Appeals recognized the equity in this reasoning, because to start the running of the statute of limitations from the date an insurer first denies coverage in light of the continuing nature of its obligation to defend, would be unfair.[8] The Court stated, "An insured should be allowed to expect the insurer to step in and cure its breach so long as the underlying action is continuing." *Id*. at 19; *see also Commercial Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167 (Md. 1997) (finding that a cause of action for breach of the duty to defend does not accrue until there has been a final judgment).

Likewise, *Lane v. Nationwide Mut. Ins. Co.*, 582 A.2d 501 (Md. 1990) is instructive. The Court of Appeals held there, that in the context of a claim against an insurer for uninsured/underinsured motorist benefits, the claim does not begin to run for the purpose of statute of limitations until after the insurer has formally denied the request for benefits. *Id*. at 505. The court specifically concluded that the limitations period does not begin when the insured knew or should have known that the tortfeasor had insufficient insurance. *Id*. Rather, the statute of limitations begins to run when the insurer officially denies the claim for benefits. To hold

---

[8]  Here, the District Court found that it would be unfair to make an insured wait until there is a final termination of the contract because insurers could "prevent policy holders from suing by continuing in perpetuity to consider the claims open and the denial of the benefits preliminary." J.A. 1277. According to *Vigilant Ins. Co. v. Luppino*, however, a plaintiff is not precluded from filing a lawsuit when an insurer denies a monthly benefit. 723 A.2d at 17. The statute of limitations, however, does not begin to run until there is a final termination of the contract by the insurer. *Id*.

15

otherwise, the Court explained, would steal the opportunity from the insurer to fulfill its contractual obligations before there was even a breach.[9] *Id*.

Here, as in *Vigilant Ins. Co.* and *Lane*, the cause of action for breach of contract in this case did not accrue until The Insurer made its final decision denying Dr. Curry's benefits. Before the Insurer sent Dr. Curry its September 29, 2008 letter, it was, by its own admission, continuing to determine eligibility for benefits due. *See* J.A. 1189-90 (A letter dated April 22, 2008 from Insurer stating they were "continuing [the] review process" and they were still paying benefits under the Policy.); *see also* J.A. 1194 (July 31, 2008 letter in which The Insurer states "while your claim has not yet been denied" and "Your claim remains open.") Yet, the District Court concluded that even while The Insurer was considering Dr. Curry's claim for benefits, and the claim had not been denied, the statute of limitations for filing a cause of action had begun to run. This contradicts reason

---

[9] The Insurer will presumably cite to Maryland decisions regarding when a cause of action accrues for breach of a contract that contemplates ongoing performance. For example, in *Singer Co., Link Simulation Systems Div. v. Baltimore Gas & Electric Co.*, 558 A.2d 419, 425 (Md. Ct. Spec. App. 1989), the intermediate appellate court concluded that "a successive breach of that obligation begins the running of the statute of limitations anew, with the result being that accrual occurs continuously." *See also Ely v. Science Applications Intern. Corp.*, 716 F. Supp. 2d 403 (D. Md. 2010). But those cases are distinguishable and involve contracts of a very different nature. For example in *Singer Co.*, the contract was for the ongoing performance of gas and electric. Once BGE breached their monthly obligation to provide the service, there was no opportunity for them to right the wrong. This is a substantial difference from the present facts where The Insurer continued to evaluate Dr. Curry's claim and did not make a final decision about paying benefits until September 29, 2008.

and the most persuasive Maryland law on point. *See also Singer Co., Link Simulation Systems Div. v. Baltimore Gas & Electric Co.*, 558 A.2d 419, 425 (Md. Ct. Spec. App. 1989) ("We observe that while the discovery rule may thus delay the accrual of a contract matter, it cannot operate to make such an action accrue earlier than the date of the breach or anticipatory breach.")

As justification for its position that The Insurer "breached the contract each time they failed to pay benefits for a period during which [Dr. Curry] was disabled," the District Court cited *Mut. Life Ins. Co. of N.Y. v. Moyle*, 116 F.2d 434, 435 (4th Cir. 1940) and *Medina v. Provident Life & Accident Ins. Co.*, No. 10 Civ. 3146 (BEL), 2011 WL 249502 (D. Md. Jan. 24, 2011). Those cases, however, simply involved calculating the jurisdictional amount necessary for a party to bring a cause of action in the United States District Courts. Neither case considered nor even discussed when a cause of action begins to accrue for purposes of the statute of limitations. Reliance on these cases by the District Court was misplaced.

## IV. CASE LAW FROM OTHER JURISDICTIONS ALSO SUPPORTS A FINDING THAT THE CAUSE OF ACTION ACCRUED WHEN THE INSURER FORMALLY DENIED DR. CURRY'S CLAIM.

According to long standing law from the Supreme Court, a disability insurance policy is breached and first starts the running of limitations when there is "repudiation by one party, to be sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total

breach, must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation." *Mobley v. New York Life Ins. Co.*, 295 U.S. 632, 638, 55 S. Ct. 876, 878, 79 L. Ed. 1621 (1935) (emphasis added) (internal citations omitted).[10]   Contrary to the District Court's Memorandum, *Mobley* actually supports Dr. Curry's position that the statute of limitations did not begin to run until The Insured finally denied the claim on September 29, 2008.  In *Mobley*, the Supreme Court recognized, that in the context of a contract which considers monthly installment payments, a breach of the contract requires repudiation of the entire contract.  The Court went onto state, "Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, **but it does not amount to a renunciation or repudiation of the policy**." *Id.* (emphasis added) (internal citations omitted).

　　This reasoning makes sense.  In the context of a disability policy, like this one, where there is a dispute about whether the insured continues to be totally disabled as defined by the policy and the parties continue to exchange information

---

[10]   The District Court states in its Memorandum Opinion that *Mobley* is not authoritative because it did not apply Maryland law.  J.A. 1275.  Dr. Curry readily acknowledges that *Mobley* does not apply Maryland law.  Rather, the case is instructive in light of the lack of Maryland law directly on topic.  Dr. Curry also disagrees with the Court's distinction of *Mobley*.

in support of their positions, non-payment of one or more monthly benefits should not commence limitations for breach of the entire contract. It is not until the insurer makes a full repudiation of the policy, that the limitations period begins to run.

Other courts that have considered this same question have come to the same result. *See Leporace v. New York Life & Annuity*, 2011 WL 679446, at *3 (D. Pa. 2011) ("in a breach of contract claim arising from denial of an insurance claim, as is the case here, the claim accrues when the insured first knows that the benefits have been terminated" through a letter from the insurer and not when there is a stoppage of benefits payments); *Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365 (3rd Cir. 1996) (stating that claims for breach of a disability contract do not begin to accrue until after the period of disability is over); (*Akins v. Washington Metro. Area Transit Auth.*, 729 F. Supp. 903, 905 (D.D.C. 1990) (The Court held that the statute of limitations on the first wife's claim did not run from the time of the original notification, because although it made the wife aware of the Department's position, it represented "an anticipated but conjectural breach."); *Fowler v. A & A Co.,* 262 A.2d 344 (D.C.1970) ("A limitations period on a contract action runs from the time the contract is breached."); *Harris v. Prudential Ins. Co. of Am.*, 93 F. App'x 139, 140 (9th Cir. 2004) ("California courts have long held that an insured's cause of action against an insurer accrues upon receipt of the

insurer's unconditional denial of liability to the insured."); *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1143 (1990) (holding that a cause of action by the insured accrues when they "were aware of the factual predicate to their suit and were aware their claim had been unconditionally denied").

As the *Mobley* Court and others that have considered this question in the context of a when the statute of limitations begins to run for breach of a disability policy have recognized, limitations does not begin to run until there is repudiation of the entire contract, not just the provision requiring monthly payment. The facts of this case illustrate why complete repudiation and not mere failure to pay monthly benefits is required.

**V. BASED ON THE INSURER'S PAST BEHAVIOR MAKING LATE PAYMENTS AND THE INSURER'S STATEMENTS TO DR. CURRY THAT HIS CLAIM WAS OPEN AND IT WAS CONTINUING THE REVIEW PROCESS, A REASONABLE JUROR COULD CONCLUDE THAT THE INSURER WOULD PAY THE BENEFITS DUE UNTIL THE FINAL DENIAL LETTER OF SEPTEMBER 29, 2008.**

The District Court stated that "[n]o reasonable jury could find that [Dr. Curry] did not discover the [Insurers'] decision to stop paying benefits before July 27, 2008," and, therefore, Dr. Curry was on notice before July 27, 2008 that The Insurer had breached the contract. J.A. 1275. The District Court incorrectly concluded that a cause of action for breach of contract accrued every time The Insurer was late in making a monthly benefit payment. As more fully explained in the previous two sections, the District Court applied the incorrect law.

Moreover, the District Court's reasoning would only make sense if The Insurer had timely paid Dr. Curry each month that benefits were due.[11]  That did not happen here.  In fact, The Insurer was habitually late in making payments.  For example, the first payment made by The Insurer, on February 18, 2004, was in arrears and for three months of benefits from December 26, 2003 through February 25, 2004.  J.A. 1073-74.  On March 11, 2005, The Insurer paid Dr. Curry benefits due for the past six months from September 26, 2004 to February 26, 2005.  J.A. 1093-94.  The Insurer did not pay the September 2007 monthly benefit until, April 22, 2008.  J.A. 1189-90.  ("At this time, we will allow 1 additional month of benefits through September 25, 2007 while we arrange the Independent Medical Evaluation.  The additional month is being provided as an exception to be of service during this continuing review process.").  Most astonishingly, it was not until August 4, 2008, that The Insurer paid Dr. Curry for past due benefits under the Social Insurance Substitute Benefits for three years prior all the way back to November 2005.  J.A. 1194-96.

The mere fact that The Insurer was not timely paying Dr. Curry his benefits due does not show that The Insured had repudiated the entire contract or that Dr.

---

[11]  Neither the District Court nor the Insurer could identify the date on which the statute of limitations began to accrue.  Rather, they both stated that it had begun to accrue sometime prior to July 27, 2008.  J.A. 1275.  The inability to place a date on when the statute of limitations began to accrue is an additional indication that there was no breach until September 29, 2008 when The Insurer first gave notice of its denial of the claim.

Curry should be on notice of such.[12]   Rather, the pattern of late, lump sum payments by The Insurer is evidence that The Insurer did interpret the contract to require monthly payment.   Considering the Insurer's course of conduct, a reasonable juror would conclude, as Dr. Curry did, that even though The Insurer was behind in payments, eventually it would pay the outstanding benefits due as it had in the past.   It was not until September 29, 2008, when The Insurer formally denied Dr. Curry's claim that he (or any reasonable person) would be on notice that The Insurer had breached the contract.

Moreover, The Insurer's course of conduct also included affirmative statements to Dr. Curry before September 29, 2008 that it considered Dr. Curry's claim open and it was still being reviewed for payment.   On April 22, 2008, for example, the Insurer wrote to Dr. Curry and stated that it did not consider any action by them or by Dr. Curry to be a repudiation of the contract, rather it was "continuing [the] review process" and it was still paying benefits under the Policy. J.A. 1190.   The Insurer reiterated this position on July 31, 2008 when it wrote, "while your claim has not yet been denied, benefits have been suspended."  J.A. 1194.   Certainly, a reasonable juror could conclude that the statute of limitations had not begun to run while The Insurer was still evaluating Dr. Curry's claim

---

[12]In Maryland, "a trier of fact determines questions of fact on which a limitations defense turns."  *Cooper v. Berkshire Life Ins. Co.*, 810 A.2d 1045, 1072 (Md. Ct. Spec. App. 2002).

because The Insured could still have approved the claim and paid past benefits due in one lump sum in accordance with its past practice.

The facts of this case exemplify the very reason why an insurer's failure to pay monthly benefits constitutes a failure to adhere to that provision of the contract, but not the entire contract itself. The Insurer did not consistently pay Dr. Curry a regular monthly benefit. The Insurer elected, instead, to pay benefits due in a lump sum. From the date Dr. Curry first applied for benefits, The Insured was not in compliance with the provision of the contract that required monthly benefit payments. The District Court erred in finding as a matter of law that the statute of limitations for some of Dr. Curry's claims had run prior to July 27, 2008 when The Insurer did not even deny the claim until September 29, 2008.

**VI.    Dr. Curry Reasonably Conditioned Undergoing A Medical Examination On The Insurer Paying Past Due Benefits.**

The District Court concluded that the Insurers "act[ed] within their contractual rights when they denied benefits after [Dr. Curry] failed to attend the June 13, 2008 examination." J.A. 1277. The Court cannot make this determination as a matter of law. In Maryland, like most other jurisdictions, "the right to require a medical examination contained in the contract of insurance should be construed by the application of a **reasonableness** rule." *Smart v. State Farm Mut. Auto. Ins. Co.*, 730 A.2d 690, 693 (Md. Ct. Spec. App. 1999) (emphasis added). Whether a party acted reasonably is a question of fact to be resolved by

23

the jury and not by the Court as a matter of law. *Hebron v. Am. Isuzu Motors, Inc.*, 60 F.3d 1095, 1098 (4th Cir. 1995) (stating "a question of reasonableness is ordinarily one of fact"); *Cooper*, 810 A.2d at 1072 (same).

The District Court, nevertheless, found that as a matter of law The Insurer acted reasonably in requesting an IME in April 2008 because this was its first request for an IME over a three year period of time. J.A. 1278. But the reasonableness standard is not limited to only the frequency of the request. Rather, the request for an IME is considered under the umbrella of a totality of the circumstances as they existed at that time. For example, in *Smart v. State Farm*, an automobile insurer requested that its' insured undergo an IME with a physician who practiced and lived in the foreign jurisdiction of the District of Columbia. 730 A.2d at 693. The Court of Special Appeals explained that it was reasonable for the plaintiff to require that the physician performing the IME submit himself to Maryland's subpoena powers before agreeing to participate in the IME. *Id*. Notably, the Court found the insured's request was not a refusal to undergo the IME, but a reasonable condition under the circumstances. *Id*. Just as in *Smart*, Dr. Curry did not make an outright refusal to undergo an IME. He, however, wanted

24

his total disability benefits to be made current before a prospective independent physical examination by the Insurer.[13]

In *Huntt v. State Farm Mut. Auto. Ins. Co.,* 527 A.2d 1333 (Md. Ct. Spec. App. 1987), the court found that an automobile insurer's request for a medical examination was reasonable in light of the fact that "State Farm reimbursed Ms. Huntt for her medical expenses until October 31, 1985 when it advised Ms. Huntt that it would not pay any further benefits unless she submitted to a medical examination by a physician selected by State Farm." *Id*. at 1333. The insurer's position in *Huntt* is exactly on all fours with Dr. Curry's position – that the request for an IME is not reasonable until the insured comes current on past benefits due.

The Insurer first made a request for an IME on April 22, 2008. J.A. 1190. Dr. Curry had proven his total disability in accordance with the Policy[14] from the

---

[13]  The Insurer even acknowledged their obligations under the Policy because they paid Dr. Curry one month's benefits to allow for the IME. J.A. 1190.

[14]  The Policy defines "Total Disability" as follows:

because of Injury or sickness:

(1)    You cannot perform the substantial and material duties of Your regular occupation (After retirement, Your occupation will be considered to be the normal activities of a retired person of Your age); and

(2)    You are receiving care by a Physician which is appropriate for the condition causing Your Disability. **You do not need to be under a Physician's care on a regular basis if You can show that further recovery is not expected**.

J.A. 1039 (emphasis added).

25

time of his claim through April 22, 2008, by his physicians' reports and opinions that he was unable to perform the work of a chiropractor and further recovery was not expected. J.A. 1188. Therefore, Dr. Curry reasonably conditioned his attendance at an IME upon the Insured bringing current his benefits that were eight months in arrears. To allow otherwise, would allow The Insured to retrospectively deny benefits due without affording Dr. Curry the opportunity to show his total disability during that time period.[15]

In fact, the Insured's own physician, Dr. Ehrlich, acknowledged that all of the previous health care providers found Dr. Curry to be permanently disabled as of April 22, 2008. J.A. 1188. Dr. Ehrlich, therefore, confirmed that Dr. Curry had met the definition of Total Disability as of April 22, 2008. Dr. Ehrlich requested an IME before he could render an opinion about whether Dr. Curry met the definition of Total Disability after April 22, 2008. *Id*. In light of Dr. Ehrlich's recognition that Dr. Curry was totally disabled as of April 22, 2008, it was reasonable for Dr. Curry to condition his attendance at an IME until his benefits had been made current.

---

[15] It is important to keep in mind that at the time the IME request was made the uncontradicted evidence was that Dr. Curry was disabled. J.A. 1188. The Insurer's reviewers had simply suggested an IME to confirm the reported opinions of Dr. Curry's doctors and their predecessor reviewers. J.A. 1188.

The United States Court of Appeals for the Second Circuit considered a similar question and aptly explained,

> If an insured had sufficiently good cause for his failure to appear at a scheduled examination, it might be unduly harsh and contrary to prevailing law to hold that he has forfeited all his rights under the contract, especially if the insured promptly sought to reschedule. Like all legal issues that require determinations of "reasonableness," the issue is one of degree.

*Mowers v. Paul Revere Life Ins. Co.,* 204 F.3d 372, 376 (2d Cir. 2000); *see also W. Nat. Ins. Co. v. Thompson*, 797 N.W.2d 201, 208 (Minn. 2011) (the **insured's refusal to submit to an IME was reasonable because her benefits had not been made current** (emphasis added)); *State Farm Mut. Auto. Ins. Co. v. O'Leary*, C0-97-2016, 1998 WL 219782 (Minn. Ct. App. May 5, 1998) (arbitrator determined that O'Leary's refusal to attend the IME was reasonable).

The District Court cited *Massachusetts Mut. Life Ins. Co. v. Sinkler*, No. 10 Civ. 0336 (PJM), 2012 WL 3059566, at *6 (D. Md. July 24, 2012) in support of its reasoning. In that case, however, the court found that the insurer was appropriate to deny benefits because the insured failed to provide satisfactory proof of loss. *Id*. The court went onto state that the insurer's request for an IME was reasonable because there was insufficient evidence that the insured was even working, insufficient evidence of her income, insufficient evidence that she was totally disabled, the insured refused to provide the required documentation, and the medical documentation that was provided regarding her disability was sparse and

27

contradictory.  *Id*. at 5.   This stands in stark contrast to the case we have here.    In the present case, Dr. Curry agreed to undergo an IME if his benefits were made current.   J.A. 1197.   Whether The Insurer can reasonably require it's insured to undergo a medical examination when The Insurer itself is not in compliance with the terms of the policy, is a question of fact for resolution by the jury and cannot be determined as a matter of law.

## CONCLUSION

In light of the foregoing, Dr. Curry respectfully requests that this Court reverse the decision of the District Court, and remand this case for a trial on the merits.

_____
E. Dale Adkins, III
Emily C. Malarkey
SALSBURY, CLEMENTS, BEKMAN,
   MARDER & ADKINS LLC
300 W. Pratt St., Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellant*

28

## <u>REQUEST FOR ORAL ARGUMENT</u>

Appellant hereby requests oral argument pursuant to Local Rule 34(a).

_____
E. Dale Adkins, III
Emily C. Malarkey
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS LLC
300 W. Pratt St., Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellant*

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No.No. 13-1995

### *Martin Curry, D.C.*

### *v.*

### *Trustmark Insurance Co., Inc. et al.*

### <u>CERTIFICATE OF COMPLIANCE</u>

1.      I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 6,906 (less than 14,000) words of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)B)(iii), as verified by Microsoft Word for Mac 2011.

2.      I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in size 14 Times New Roman type.

_____                          _____

Date                                    E. Dale Adkins, III
                                         *Attorney for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of September, 2013, I served

Appellant's Opening Brief upon the Appellees by electronic filing and by mailing

a copy, first class, postage pre-paid, to:

Jason A. Walters, Esquire
Bradley, Arant, Boult, and Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

J. Snowden Stanley, Jr. Esquire
Scott Trager, Esquire
Semmes, Bowen & Semmes
25 South Charles Street, Ste 1400
Baltimore, MD 21201

Counsel for Appellees


_____
E. Dale Adkins, III
*Attorney for Appellant*